UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

THE ANNUITY, WELFARE AND
APPRENTICESHIP SKILL IMPROVEMENT &
SAFETY FUNDS OF THE INTERNATIONAL
UNION OF OPERATING ENGINEERS LOCAL
15, 15A, 15C & 15D, AFL-CIO, by Their Trustees
James T. Callahan, Thomas A. Callahan, Michael
Salgo, and William Tyson; CENTRAL PENSION
FUND OF THE INTERNATIONAL UNION OF
OPERATING ENGINEERS, by Its Chief
Executive Officer Michael A. Crabtree; and
INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 15, 15A, 15C & 15D, AFL-
CIO, by Its President and Business Manager
Thomas A. Callahan,

**ORDER**

22 Civ. 703 (VMS)

Plaintiffs,

-against-

BAYMEN INDUSTRIES LTD.,

Defendant.

------------------------------------------------------------ x

**Vera M. Scanlon, United States Magistrate Judge:**

Presently before the Court is the unopposed motion for summary judgment filed by

Plaintiffs The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the

International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO, by their

trustees James T. Callahan, Thomas A. Callahan, Michael Salgo, and William Tyson

(respectively, the "Annuity Fund," the "Welfare Fund" and the "Apprenticeship Fund"); Central

Pension Fund of the International Union of Operating Engineers, by its chief executive officer

Michael A. Crabtree (the "Pension Fund" and, collectively with the Annuity Fund, the Welfare

Fund and the Apprenticeship Fund, the "Funds"); and International Union of Operating

Engineers Local 15, 15A ("15, 15A"), 15C ("15C") & 15D ("15D"), AFL-CIO, by its president

1

and business manager Thomas A. Callahan (collectively, the "Union").  See generally ECF Nos.

23-30.[1]

---

[1] The Court solicited supplemental briefing from Plaintiffs regarding, inter alia, whether the Union complied with the dispute resolution procedures set forth in its collective bargaining agreement (the "Baymen Agreement") with Defendant Baymen Industries Ltd. ("Baymen") and, if not, whether such compliance is excused.  See 9/20/2023 Order.  The relevant provision of the Baymen Agreement provided that

> [a]ny complaint, dispute or difference arising out of this Agreement shall be referred to the Union Business Agent and a representative of the Employer for a job site meeting within three (3) days [sic] notice to them of the occurrence giving rise to such complaint, dispute or difference.  If the matter is not resolved within seven (7) days of such meeting, then the aggrieved party may submit the matter for arbitration to one of the two (2) arbitrators named hereafter.  These arbitrators shall be John Crotty and Eugene T. Coughlin.

ECF No. 28-1 ¶ 2.

As to the former inquiry, Plaintiffs inform the Court that the Union "did not invoke the dispute resolution procedure."  ECF No. 31 at 2.

Aa to the latter inquiry, Plaintiffs' response is twofold.

First, Plaintiffs contend that they do not believe that the Union was required to comply with the dispute resolution procedures set forth in the Baymen Agreement "before joining with the other Plaintiffs to commence this action" because "the LMRA authorizes federal lawsuits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."  ECF No. 31 at 2-3 (citation, quotations & footnote omitted).  The Court finds this argument to be unconvincing.  Whether the Union was authorized to institute the instant action and whether the Union satisfied the necessary preconditions to instituting the instant action, if any, are two distinct questions.  The Court is concerned with the latter question, which Plaintiffs' first argument does not address.

Second, Plaintiffs contend that, if the Union was required to comply with the dispute resolution procedures set forth in the Baymen Agreement, Baymen's failure to raise such non-compliance as an affirmative defense, see generally ECF No. 10, and, instead, decision to litigate this action resulted in a waiver of such defense.  See, e.g., Tech. in P'ship, Inc. v. Rudin, 538 F. App'x 38, 39-40 (2d Cir. 2013) (considering whether the defendants waived their contractual right to resolve the dispute via a dispute resolution procedure, namely arbitration, by failing to timely raise such right and instead actively litigating the dispute; reasoning that the waiver analysis involves an assessment "(1) the time elapsed from commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof or prejudice"; reasoning that "our Circuit's waiver case law . . . derives from the uncontroversial premise that affirmative defenses like arbitrability are subject to forfeiture if not raised in a timely fashion"; and affirming the district court's denial of the defendants' motion to

For the reasons set forth below, the Court grants in part and denies without prejudice in part Plaintiffs' motion, as detailed herein. More specifically, the Court grants this motion in favor of the Union for the Non-ERISA Contributions in the amount of $4,169.74 and denies without prejudice pre-judgment interest thereon, grants this motion in favor of the Funds for the ERISA Contributions in the amount of $46,339 and denies without prejudice pre-judgment interest thereon and an additional amount of interest or liquidated damages, grants an award of attorneys' fees in the amount of $11,685 and grants an award of costs in the amount of $1,861.45, totaling $64,055.19.

By October 21, 2024, Plaintiffs may file a supplemental submission, which need not be a separate motion, including either or both of the following: (1) legal argument as to why the Court should grant pre-judgment interest in favor of the Union on the Non-ERISA Contributions and (2) an affidavit setting forth pre-judgment interest calculations, through the date of the supplemental submission, on the ERISA Contributions, including the pertinent date on which interest began to accrue for each such calculation. If Plaintiffs do not intend to file such a supplemental submission, by October 21, 2024, they must file a letter informing the Court of such decision. Either the supplemental submission or the letter must be accompanied by a

---

compel arbitration (citations & quotations omitted)). In view of the pendency of this action for more than two years, the litigation of this action through summary judgment motion practice, and the prejudice that would inure to the Union if it were no longer permitted to prosecute this action after a significant investment of time and expense, the Court finds that Baymen has waived the mandatory portion of the dispute resolution procedures, see ECF No. 28-1 ¶ 2 (providing that "[a]ny complaint, dispute or difference arising out of this Agreement shall be referred to the Union Business Agent and a representative of the Employer for a job site meeting within three (3) days [sic] notice to them of the occurrence giving rise to such complaint, dispute or difference") set forth in the Baymen Agreement.

An additional basis for finding that Baymen has waived the mandatory portion of the dispute resolution procedures set forth in the Baymen Agreement is that Baymen declined to oppose this motion. See generally ECF Nos. 22 & 22-1.

proposed form of judgment as to the relief granted herein, as well as any additional relief

requested in the supplemental submission if Plaintiffs file such a submission; Plaintiffs must

send a Word version of the proposed form of judgment via email to

scanlon_chambers@nyed.uscourts.gov.  If Plaintiffs file a supplemental submission, they must

mail a copy of such submission, including the proposed form of judgment, to Baymen and to

Baymen's counsel of record.  If Plaintiffs file a supplemental submission, Baymen may file an

opposition by November 4, 2024, and no reply is permitted.

     The Court will not enter a partial judgment at this time.  Instead, following receipt of

either Plaintiffs' supplemental submission, and any opposition thereto, or Plaintiffs' letter

notifying the Court that they do not intend to file a supplemental submission, the Court will enter

a complete judgment.

## I.     LEGAL STANDARD

     Pursuant to Federal Rule of Civil Procedure 56, a court must "grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Jackson v. Fed. Exp., 766 F.3d

189, 193-94 (2d Cir. 2014) (citations omitted).  Motions for summary judgment must include "a

separate, short and concise statement, in numbered paragraphs, of the material facts as to which

the moving party contends there is no genuine issue to be tried," Loc. Civ. R. 56.1(a), and a party

opposing the motion must include

> a correspondingly numbered paragraph admitting or denying, and otherwise
> responding to, each numbered paragraph in the statement of the moving party,
> and, if necessary, additional paragraphs containing a separate, short and concise
> statement of additional material facts as to which it is contended that there exists a
> genuine issue to be tried,

Loc. Civ. R. 56.1(b).  Statements of material fact must be supported by either "citing to

4

particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); see also Local Civ. R. 56.1(d) (providing that statements of material fact, and responses thereto, "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)").

Of particular import with respect to unopposed motions for summary judgment is that, "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," inter alia, "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2); see also Local Civ. R. 56.1(c) (providing that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party"); Jackson, 766 F.3d at 194 (noting that "[t]he non-moving party need not respond to the motion" but that "a non-response runs the risk of unresponded-to statements of undisputed facts proffered by the movant being deemed admitted" (citations omitted)). Nonetheless, "[b]efore summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed" and "must determine whether the legal theory of the motion is sound." Jackson, 766 F.3d at 194 (citation omitted); see also Fed. R. Civ. P. 56(e)(3) (noting that, "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," inter alia, "grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it"). In sum, Federal Rule of Civil Procedure 56 does not allow district courts to automatically

5

grant summary judgment on a claim simply because the summary judgment motion . . . is unopposed" but rather requires them to "examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." Jackson, 766 F.3d at 194, 197.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS[2, 3]

### A.  The 15, 15A Agreement

15, 15A entered into a collective bargaining agreement with the Members of the General Contractors Association of New York, Inc. (the "GCA") for the time period spanning July 1, 2018 to June 30, 2022 (the "15, 15A Agreement").  See ECF No. 24 ¶ 12; ECF No. 28-2 at 2. The 15, 15A Agreement covered heavy construction work performed by a given employer, such as Baymen.  See ECF No. 24 ¶¶ 9, 12; ECF No. 28-2 Arts. II & VIII, Sec. 1.  15, 15A employees who performed work pursuant to the 15, 15A Agreement were operating engineers who

---

[2] The Court has verified that each of the facts cited herein, which are drawn from Plaintiffs' statement of undisputed material facts filed pursuant to Local Civil Rule 56.1, see generally ECF No. 24, are supported by the record support cited therein, in accordance with its obligation to do so pursuant to Federal Rule of Civil Procedure 56(e)(3) and Jackson.

[3] Local Civil Rule 56.1(d) provides that statements of material fact, and responses thereto, "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Given that the following statements of material fact are supported only by citation to the complaint in this action, which would not be admissible evidence in this action, the Court cannot credit such statements: that the Annuity Fund, the Welfare Fund and the Apprenticeship Fund were "multi-employer/employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA," ECF No. 24 ¶ 2; that the Annuity Fund, the Welfare Fund and the Apprenticeship Fund were "administered by a Board of Trustees composed of Trustees James T. Callahan, Thomas A. Callahan, Michael Salgo and William Tyson," who were "'fiduciaries' within the meaning of Section 3(21) of ERISA," id. ¶ 3; that the Pension Fund was "an employee pension benefit plan within the meaning of Section 3(2) of ERISA," id. ¶ 4; that the Pension Fund was "administered through its Chief Executive Officer who [wa]s a 'fiduciary' within the meaning of Section 3(21) of ERISA," id. ¶ 5; that the Union was "a labor organization as defined in Section 2 of the LMRA," id. ¶ 6; and that "Thomas A. Callahan [wa]s the President & Business Manager of" the Union, id. ¶ 7.

6

performed heavy construction work.  See ECF No. 24 ¶ 12; ECF No. 25 ¶ 3; ECF No. 28-2 Arts. VII, Sec. 2 & IX, Sec. 6(b).[4]  The 15, 15A Agreement provided for employer payments to the following fringe benefit funds, all to be made through the purchase of consolidated stamps: welfare, pension, annuity, apprentice and training, medical reimbursement account, vacation and dues checkoff/supplemental dues.  See ECF No. 24 ¶ 16; ECF No. 28-2 Art. XI, Sec. B.

The 15, 15A Agreement also bound employers "by all the terms and conditions of the Agreement and Declaration of Trust Plan with respect to each of the Fringe Benefit Funds[,] . . . as well as the Central Pension Fund[,] . . . which Agreements and Declarations of Trust and Plans [we]re hereby made part of this Agreement and shall be considered as incorporated herein."  See ECF No. 24 ¶ 22; ECF No. 28-2 Art. XI, Sec. 11.  As relevant here, the following funds were each formed pursuant to such trust agreements for ERISA contributions: the Annuity Fund, see generally ECF No. 28-4; the Welfare Fund, see generally ECF No. 28-5, which also included the medical reimbursement account and vacation, see ECF No. 26 ¶ 2; the Apprenticeship Fund, see generally ECF No. 28-6, which also included training, see ECF No. 25 ¶ 7; and the Pension Fund, see generally ECF No. 28-7 (collectively, namely annuity, welfare, medical reimbursement account, vacation, apprentice, training, and pension, the "ERISA Contributions").  See ECF No. 24 ¶ 1.  The dues checkoff/supplemental dues and political action committee contributions were non-ERISA contributions (collectively, the "Non-ERISA Contributions").  See ECF No. 25 ¶ 8.

## B.    The 15C Agreement

15C entered into a collective bargaining agreement with the GCA for the time period spanning July 1, 2018 to June 30, 2022 (the "15C Agreement).  See ECF No. 24 ¶ 13; ECF No.

---

[4] See also ECF No. 31 at 5 (supplemental briefing clarifying this fact).

28-3 at 2. The 15C Agreement covered heavy construction work performed by a given employer, such as Baymen. See ECF No. 24 ¶¶ 9, 13; ECF No. 28-3 Arts. II & VIII, Sec. 1. 15C employees who performed work pursuant to the 15C Agreement were those who "[r]epair[ed], service[d], assemble[d], maintain[ed] and rebuil[t] all types of contractor machinery" and "[o]perate[d] only at an [e]mployer's premises hoisting devices." See ECF No. 24 ¶ 13; ECF No. 25 ¶ 4; ECF No. 28-3 Art. VIII, Sec. 2.[5] The 15C Agreement provided for employer payments to the following fringe benefit funds, all to be made through the purchase of consolidated stamps: welfare, pension, annuity, apprentice and training, medical reimbursement account, vacation and dues checkoff/supplemental dues. See ECF No. 24 ¶ 17; ECF No. 28-3 Art. XI.[6]

The 15C Agreement also bound employers "by all the terms and conditions of the Agreement and Declaration of Trust Plan with respect to each of the Fringe Benefit Funds, which Agreement and Declarations of Trust and Plans [we]re hereby made part of this Agreement and shall be considered as incorporated herein." See ECF No. 24 ¶ 23; ECF No. 28-3 Art. XI, Sec. 11. As relevant here, the following funds were each formed pursuant to such trust agreements for ERISA Contributions: the Annuity Fund, see generally ECF No. 28-4; the Welfare Fund, see generally ECF No. 28-5, which also included the medical reimbursement account and vacation, see ECF No. 26 ¶ 2; the Apprenticeship Fund, see generally ECF No. 28-6, which also included

---

[5] See also ECF No. 31 at 5 (supplemental briefing clarifying this fact).

[6] The Court notes that, although the medical reimbursement account fund was referenced in the list of funds encompassed within the consolidated stamps in the 15, 15A Agreement, see ECF No. 28-3 Art. XI, Sec. 10, such fund was not separately listed in Article XI of the 15C Agreement, as with all of the other funds. This apparent omission does not change the analysis, due to the incorporation of the trust agreement for the Welfare Fund, which includes the medical reimbursement account, by reference into the 15C Agreement, discussed infra.

training, see ECF No. 25 ¶ 7; and the Pension Fund, see generally ECF No. 28-7.  See ECF No. 24 ¶ 1.  The dues checkoff/supplemental dues and political action committee contributions were Non-ERISA Contributions.  See ECF No. 25 ¶ 8.

### C.     The Baymen Agreement

Baymen entered into the Baymen Agreement with the Union on April 9, 2019, which was unexpired as of January 6, 2023.  See ECF No. 24 ¶ 8; ECF No. 25 ¶ 5; see generally ECF No. 28-1.  The Baymen Agreement bound Baymen "to all the terms and conditions as [we]re applicable from time to time by the nature of the work performed for each of the Association Collective Bargaining Agreements[,] which [we]re incorporated by reference herein as if fully set forth in this Agreement."  ECF No. 28-1 ¶ 1.  As such, given that Baymen performed heavy construction work and related equipment-repair and service work, see ECF No. 24 ¶ 9; ECF No. 25 ¶ 5, the 15, 15A Agreement, see ECF No. 24 ¶ 14; ECF No. 25 ¶ 5; ECF No. 28-1 ¶ 1; ECF No. 28-2 Art. II, and the 15C Agreement, ECF No. 24 ¶ 15; ECF No. 25 ¶ 5; ECF No. 28-1 ¶ 1; ECF No. 28-3 Art. II, were incorporated by reference into the Baymen Agreement.[7]

The Baymen Agreement bound Baymen "to all the agreements and declarations of trusts, amendments and regulations, thereto, establishing the fringe benefit trust funds referenced in the applicable Association Collective Bargaining Agreements and to remit all contributions as set forth under the applicable Association Collective Bargaining Agreements and all amendments,

---

[7] The Court notes that the Baymen Agreement incorporated by reference collective bargaining agreements entered into by "the Union," defined as "Local Union 14-14B and Local Union 15, 15A, 15C and 15D, International Union of Operating Engineers, AFL-CIO," and "the General Contractors Association of New York."  See ECF No. 28-1 at 2.  Neither of these parties precisely match the parties described in the 15, 15A Agreement or the 15C Agreement.  In its supplemental briefing requested by the Court, Plaintiffs clarified (1) that the Union was comprised of three separate chartered divisions, namely 15, 15A, 15C and Local 15D, and (2) that the GCA was a member-based organization contracting on behalf of its members.  See ECF No. 31 at 1-2 (citations omitted).

renewals and/or extensions thereto." See ECF No. 24 ¶ 21; ECF No 28-1 ¶ 4.  The Baymen

Agreement also provided for the payment of such ERISA and Non-ERISA Contributions by

Baymen through the purchase of stamps, consistent with the 15, 15A Agreement and the 15C

Agreement.  See ECF No. 28-1 ¶ 5.

    **D.**    **The Claimed Deficiencies**

An audit of Baymen's payroll records for the time period beginning on January 1, 2018

and ending on June 30, 2021 resulted in the issuance of a deficiency report, which claimed a

deficiency of ERISA and Non-ERISA Contributions for 32 regular hours and 537 double-time

hours of work performed pursuant to the 15, 15A Agreement between June 22, 2019 and June

30, 2020, and a deficiency of ERISA and Non-ERISA Contributions for 306 regular hours of

work performed pursuant to the 15C Agreement between July 1, 2020 and June 30, 2021.  See

ECF No. 24 ¶¶ 25-26; ECF No. 27 ¶¶ 3-4; see generally ECF No. 28-12.

As to the deficiency for the 40 double-time hours of work performed pursuant to the 15,

15A Agreement between June 22, 2019 and June 30, 2019, for the ERISA Contributions, the cost

of the 40-hour stamp was $352 for welfare, doubled to $704; $296 for pension;[8] $510 for

annuity, doubled to $1020; $40 for apprentice, doubled to $80; $2 for the national training fund,

doubled to $4; $48 for the medical reimbursement account, doubled to $96; and $170 for

vacation, doubled to $340.[9]  See ECF No. 24 ¶ 27; ECF No. 26 ¶ 9; ECF No. 27 ¶ 5; ECF No.

---

[8] The audit report did not double this amount.  See ECF No. 28-12 at 3.  Although unexplained by Plaintiffs, the Court presumes that this decision results from the statement in the applicable wage-scale schedule that overtime for the Pension Fund was paid at the regular rate.  See ECF No. 28-8 at 11.  The Court assumes that the wage-scale schedule used imprecise or underinclusive language, namely "overtime," to account for both overtime and double time.

[9] Although unexplained by Plaintiffs, the applicable wage-scale schedule listed the cost of a regular 40-hour stamp for "Vacation/PAC" as $172, doubled to $344.  See ECF No. 28-8 at 11.

28-8 at 11; ECF No. 28-12 at 3.  As to the deficiency for the 40 double-time hours of work performed pursuant to the 15, 15A Agreement between June 22, 2019 and June 30, 2019, for the Non-ERISA Contributions, the cost of the 40-hour stamp was $115.20 for dues checkoff/supplemental dues, doubled to $230.40, and $2 for the political action committee, doubled to $4.  See ECF No. 24 ¶ 27; ECF No. 26 ¶ 9; ECF No. 27 ¶ 5; ECF No. 28-8 at 11; ECF No. 28-12 at 3.  The total was $2,774.40.  See ECF No. 28-12 at 3.  Plaintiffs also claimed interest of $397.54 on the ERISA Contributions, see ECF No. 28-12 at 3, through December 31, 2021, calculated by multiplying the number of days the amount was overdue by the applicable interest rate, dividing that product by 365 days and multiplying that quotient by the overdue amount, see ECF No. 27 ¶ 6.

As to the deficiency for the 32 regular and 497 double-time hours of work performed pursuant to the 15, 15A Agreement between July 1, 2019 and June 30, 2020, for the ERISA Contributions, the cost of the 1-hour stamp was $9.55 for welfare, doubled to $19.10; $7.40 for pension;[10] $13 for annuity, doubled to $26; $1 for apprentice, doubled to $2; $0.05 for the national training fund, doubled to $0.10; $0.95 for the medical reimbursement account, doubled to $1.90; and $4.75 for vacation, doubled to $9.50.[11]  See ECF No. 24 ¶ 27; ECF No. 26 ¶ 9;

---

Given that the audit report listed the amount for "Vacation" as $340 and the amount for "PAC" as $4, totaling $344, see ECF No. 28-12 at 3, the Court presumes that this breakdown is correct.

[10] The audit report did not double this amount.  See ECF No. 28-12 at 5.  Although unexplained by Plaintiffs, the Court presumes that this decision results from the statement in the applicable wage-scale schedule that overtime for the Pension Fund was paid at the regular rate.  See ECF No. 28-8 at 34.  The Court assumes that the wage-scale schedule used imprecise or underinclusive language, namely "overtime," to account for both overtime and double time.

[11] Although unexplained by Plaintiffs, the applicable wage-scale schedule listed the cost of a regular 1-hour stamp for "Vacation/PAC" as $4.80, doubled to $9.60.  See ECF No. 28-8 at 34. Given that the audit report listed the amount for "Vacation" as $4.75, doubled to $9.50, and the

ECF No. 27 ¶ 5; ECF No. 28-8 at 34; ECF No. 28-12 at 5.  As to the deficiency for the 32 regular and 497 double-time hours of work performed pursuant to the 15, 15A Agreement between July 1, 2019 and June 30, 2020, for the Non-ERISA Contributions, the cost of the 1-hour stamp was $3.04 for dues checkoff/supplemental dues, doubled to $6.08, and $0.05 for the political action committee, doubled to $0.10.  See ECF No. 24 ¶ 27; ECF No. 26 ¶ 9; ECF No. 27 ¶ 5; ECF No. 28-8 at 34; ECF No. 28-12 at 5.  The total was $37,146.74.  See ECF No. 28-12 at 5.  Plaintiffs also claimed interest of $3,145.52 on the ERISA Contributions, see ECF No. 28-12 at 5, through December 31, 2021, calculated by multiplying the number of days the amount was overdue by the applicable interest rate, dividing that product by 365 days and multiplying that quotient by the overdue amount, see ECF No. 27 ¶ 6.

As to the deficiency for 306 regular hours of work performed pursuant to the 15C Agreement between July 1, 2020 and June 30, 2021, for the ERISA Contributions, the cost of the 1-hour stamp was $9.80 for welfare, $6.65 for pension, $10.75 for annuity, $0.20 for apprentice, $0.05 for the national training fund, $0.95 for the medical reimbursement account, and $3.70 for vacation.  See ECF No. 24 ¶ 27; ECF No. 26 ¶ 9; ECF No. 27 ¶ 5; ECF No. 28-9 at 4; ECF No. 28-12 at 6.  As to the deficiency for 306 regular hours of work performed pursuant to the 15C Agreement between July 1, 2020 and June 30, 2021, for the Non-ERISA Contributions, the cost of the 1-hour stamp was $2.45 for supplemental dues and $0.05 for the political action committee.  See ECF No. 24 ¶ 27; ECF No. 26 ¶ 9; ECF No. 27 ¶ 5; ECF No. 28-9 at 4; ECF No. 28-12 at 6.  The total was $10,587.60.  See ECF No. 28-12 at 6.[12]  Plaintiffs also claimed interest

---

amount for "PAC" as $0.05, doubled to $0.10, totaling $4.80, doubled to $9.60, see ECF No. 28-12 at 5, the Court presumes that this breakdown is correct.

[12] The deficiency report incorrectly listed the total as $10,588.85.  See ECF No. 28-12 at 6.

of $295.38 on the ERISA Contributions, see ECF No. 28-12 at 6, through December 31, 2021, calculated by multiplying the number of days the amount was overdue by the applicable interest rate, dividing that product by 365 days and multiplying that quotient by the overdue amount, see ECF No. 27 ¶ 6.

Plaintiffs also claimed audit costs of $1,459.45.  See ECF No. 24 ¶ 24; see ECF No. 28-12 at 2.

As of the date of the motion, Baymen had failed to pay any amounts identified in the deficiency report.  See ECF No. 24 ¶ 28; ECF No. 26 ¶ 9.

## III.   DISCUSSION

The Union claims that Baymen breached the Baymen Agreement and failed to pay the Non-ERISA Contributions, in violation of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §§ 141 et seq. ("LMRA").  The Funds claim that Baymen failed to pay the ERISA Contributions, in violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA").

### A.   Claim for Breach of the Baymen Agreement and for Non-ERISA Contributions

The Court sets forth the applicable law, then applies it to the facts of this case.

#### 1.   Applicable Law

The LMRA provides that

[s]uits for violations of contracts between an employer[13] and a labor organization representing employees in an industry affecting commerce[14] as defined in this

---

[13] An "employer" is "any person acting as an agent of an employer, directly or indirectly."  29 U.S.C. § 152(2); see 29 U.S.C. § 142(3).  Baymen is included within the scope of this definition.

[14] A "labor organization" is "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes,

chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a);[15] see Cement & Concrete Workers Dist. Council Welfare Fund v. Superior Gunite, --- F. Supp. 3d ---, No. 22 Civ. 1014 (KAM) (TAM), 2024 WL 3532966, at *3 (E.D.N.Y. July 25, 2024) (noting that the LMRA "permits a union to sue an employer in federal court for breach of a collective bargaining agreement" and recover "'non-ERISA' sums such as union dues" (citations omitted)).

### 2.    Application

The Court grants summary judgment in favor of the Union as to the Non-ERISA Contributions in the amount of $4,169.74.  As discussed above, see supra, Sec. II(D), the deficiency for the 15, 15A Agreement is $234.40 for the 40 double-time hours of work performed between June 22, 2019 and June 30, 2019, with the 40-hour stamp for dues checkoff/supplemental dues and the political action committee costing $117.20, or $234.40 when doubled.  As discussed above, see supra, Sec. II(D), the deficiency for the 15, 15A Agreement is $98.88 for the 32 regular hours of work performed between July 1, 2019 and June 30, 2020, with

---

wages, rates of pay, hours of employment, or conditions of work."  29 U.S.C. § 152(5); see 29 U.S.C. § 142(3).  An "employee" is

> any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment.

29 U.S.C. § 152(3); see 29 U.S.C. § 142(3).  An "industry affecting commerce" is "any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce."  29 U.S.C. § 142(1).  The Union is a labor organization representing employees in an industry affecting commerce.

[15] Baymen answered the complaint but did not assert the defense of lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12.

the 1-hour stamp for dues checkoff/supplemental dues and the political action committee costing $3.09, and is $3,071.46 for the 497 double-time hours of work performed between July 1, 2019 and June 30, 2020, with the 1-hour stamp for dues checkoff/supplemental dues and the political action committee costing $3.09, doubled to $6.18.  As discussed above, see supra, Sec. II(D), the deficiency for the 15C Agreement is $765 for the 306 regular hours of work performed between July 1, 2020 and June 30, 2021, with the 1-hour stamp for dues checkoff/supplemental dues and the political action committee costing $2.50.  The total amount of Non-ERISA Contributions owed is $4,169.74.

The Court denies without prejudice summary judgment in favor of the Union as to pre-judgment interest on the Non-ERISA Contributions.  The Union requests that the Court award pre-judgment interest on the Non-ERISA Contributions.  See ECF No. 29 at 22.  The Union does not provide the Court with a justification as to why it should exercise its "sound discretion" in deciding "to award prejudgment interest" here, which is a "case[] arising under federal law . . . in the absence of a statutory directive" as to pre-judgment interest.  Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp., 534 F.2d 422, 446 (2d Cir. 1975) (citations omitted).  An explanation of the basis for its request would have been helpful, given that other agreements at issue explicitly provide for awards of pre-judgment interest.  In the absence of such justification, the Court declines to exercise its discretion to award pre-judgment interest on the Non-ERISA Contributions.

### B.   Claim for ERISA Contributions

The Court sets forth the applicable law, then applies it to the facts of this case.

### 1.  Applicable Law

ERISA provides that

> [e]very employer[16] who is obligated to make contributions to a multiemployer plan[17] under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  Enactment of this statutory provision arose from a concern "about the problem that had arisen because a substantial number of employers had failed to make their promised contributions on a regular and timely basis."  Laborers Health & Welfare Trust Fund for N. Calif. v. Advanced Lightweight Concrete Co., 484 U.S. 539, 546 (1988) (quotations & footnote omitted).  As such, "[t]o be liable for delinquent contributions under Section 515 of

---

[16] An "employer" is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan . . . and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5).  Baymen is included within the scope of this definition.

[17] A "multiemployer plan" is a plan "to which more than one employer is required to contribute, . . . which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and . . . which satisfies such other requirements as the Secretary may prescribe by regulation."  29 U.S.C. § 1002(37)(A).  An "employee organization" is
> any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships[,] . . . or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

29 U.S.C. § 1002(4).  The Annuity Fund, the Welfare Fund and the Apprenticeship Fund are multiemployer plans.  By contrast, the Pension Fund is an
> employee pension benefit plan," which is "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program . . . provides retirement income to employees, or . . . results in a deferral of income by employees for periods extending to the termination of the covered employment or beyond.

29 U.S.C. § 1002(2)(A).

ERISA, a defendant must (1) have contribution obligations that arise from either a 'plan' or a 'collectively bargained agreement' and (2) be an 'employer' within the meaning of ERISA." Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. New York City Dep't of Educ., 9 F.4th 91, 94 (2d Cir. 2021) (citations omitted).  If "a fiduciary[18] for or on behalf of a plan" succeeds on a claim asserted pursuant to 29 U.S.C. § 1145, the court must award the plan the unpaid contributions; interest thereon; an amount equal to the greater of interest thereon and liquidated damages pursuant to the plan not exceeding twenty percent, or such a higher percent otherwise permitted by federal or state law, of the unpaid contributions; reasonable attorneys' fees and costs; and other appropriate legal or equitable relief.  See 29 U.S.C. § 1132(g)(2).

### 2.  Application

#### a.  Unpaid ERISA Contributions

The Court grants summary judgment in favor of the Funds as to the unpaid ERISA Contributions in the amount of $46,339.  As discussed above, see supra, Sec. II(D), the deficiency for the 15, 15A Agreement is $2,540 for the 40 double-time hours of work performed between June 22, 2019 and June 30, 2019, with the 40-hour stamp for welfare, pension, annuity, apprentice, the national training fund, the medical reimbursement account and vacation costing $1,418, or $2,540 when doubled, except with regard to pension.  As discussed above, see supra, Sec. II(D), the deficiency for the 15, 15A Agreement is $1,174.40 for the 32 regular hours of

---

[18] A "fiduciary" is such "with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  The trustees of the Annuity Fund, the Welfare Fund and the Apprenticeship Fund and the chief executive officer of the Pension Fund are fiduciaries of their respective Funds.

work performed between July 1, 2019 and June 30, 2020, with the 1-hour stamp for welfare, pension, annuity, apprentice, the national training fund, the medical reimbursement account, and vacation costing $36.70, and is $32,802 for the 497 double-time hours of work performed between July 1, 2019 and June 30, 2020, with the 1-hour stamp for welfare, pension, annuity, apprentice, the national training fund, the medical reimbursement account, and vacation costing $36.70, or $66 when doubled, except with regard to pension. As discussed above, see supra, Sec. II(D), the deficiency for the 15C Agreement is $9,822.60 for the 306 regular hours of work performed between July 1, 2020 and June 30, 2021, with the 1-hour stamp for welfare, pension, annuity, apprentice, the national training fund, the medical reimbursement account, and vacation costing $32.10. The total amount of ERISA Contributions owed is $46,339.

### b.    Interest On Unpaid ERISA Contributions

The Court denies without prejudice summary judgment in favor of the Funds as to interest on the unpaid ERISA Contributions, as the Court is unable to evaluate the interest calculations made in the deficiency report because neither the deficiency report, nor the other submissions filed in support of the motion for summary judgment, inform the Court of the pertinent dates on which interest began to accrue. The affidavit of Lisa Madeiras, "payroll audit manager [at] . . . the accounting firm of Schultheis & Panettieri, LLP, which is retained by Plaintiffs to conduct audits of contributing employers' payroll records to determine if the appropriate amounts in ERISA and non-ERISA contributions have been submitted for the period audited," indicates that interest was calculated by multiplying the number of days the amount was overdue by the applicable interest rate, dividing that product by 365 days and multiplying that quotient by the overdue amount. ECF No. 27 ¶¶ 1, 6. The record contains the applicable interest rates and the amounts of the unpaid ERISA Contributions but does not contain the

18

number of days that each amount was overdue.  That information is necessary to verify the interest calculations.[19]

             **c.**        **Amount Equal To The Greater Of Interest On The Unpaid ERISA Contributions And Liquidated Damages Pursuant To The Plan Not Exceeding Twenty Percent, Or Such A Higher Percent Otherwise Permitted By Federal Or State Law, Of The Unpaid ERISA Contributions**

The Court denies without prejudice summary judgment in favor of the Funds as to the amount equal to the greater of interest on the unpaid ERISA Contributions and liquidated damages pursuant to the plan not exceeding twenty percent, or such a higher percent otherwise permitted by federal or state law, of the unpaid ERISA Contributions.  Given that the Court is unable to calculate the interest on the unpaid ERISA Contributions based on the present record, see supra, Sec. III(B)(2)(b), the Court cannot evaluate whether the amount of such interest or of the liquidated damages would be greater.

             **d.**        **Reasonable Attorneys' Fees And Costs**

The Court first discusses attorneys' fees, then discusses costs.

             **i.**        **Attorneys' Fees**

Reasonable attorneys' fees under ERISA, see 29 U.S.C. § 1132(g)(2), are calculated by "us[ing] the lodestar method – hours reasonably expended multiplied by a reasonable hourly rate."  McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006) (citations omitted).  As to the number of hours expended, "the prevailing party's fee application must be supported by contemporaneous time records,[20]

---

[19] If the Funds want to make a submission providing this information, they should use updated interest calculations through the date of the submission.

[20] The requirement for contemporaneous time records is satisfied here, as Plaintiffs' counsel's time records submitted reflect "a reconstructed record of original time entries made

affidavits, and other materials." Id. (citations omitted).  As to the hourly rate, "[a] reasonable hourly rate is a rate in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation."  Id. (citations & quotations omitted).

As to the rate, Plaintiffs' counsel has "been practicing in this field of law since February of 1995" and is seeking an award at a rate of $410 per hour.  See ECF No. 28 ¶ 9.  This is a reasonable hourly rate for an attorney with nearly 30 years of experience in this field in this District.  See, e.g., Maddaloni v, Pension Trust Fund of Pension, Hospitalization and Benefit Plan of the Electric Indus., No. 19 Civ. 3146 (RPK) (ST), 2023 WL 6457756, at *2 (E.D.N.Y. Oct. 4, 2023) (reciting that "typical hourly fees in the ERISA context are $300 to $450 per hour for partners" and setting the hourly rate for two partners and one of counsel as $420 (citations & quotations omitted)).

As to the number of hours expended, Plaintiffs' counsel expended 28.5 hours, see ECF No. 28 ¶ 11: 1.5 hours on the pleadings, 6.5 hours on discovery and other pretrial matters, 9 hours on arbitration and settlement, and 11.5 hours on the motion for summary judgment.  See generally ECF No. 28-14.  The Court finds that this expenditure, which includes the full course of litigation through summary judgment motion practice, is highly reasonable and efficient.

The Court grants Plaintiffs' counsel's request for $11,685 in attorneys' fees.

---

contemporaneously with the services performed on behalf of Plaintiffs and which are maintained by counsel's law firm in its permanent records."  ECF No. 29 at 17 (citations omitted); ECF No. 28 ¶ 10; see Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 149 (2d Cir. 2014) (stating that the requirement for contemporaneous time records is satisfied "[s]o long as an attorney made contemporaneous entries as the work was completed . . . and . . . based [her billing] on these contemporaneous records" (citations & quotations omitted)).

###### ii.      Costs

The Court grants Plaintiffs' request for an award of costs of $1,861.45, comprised of

$1,459.45 in auditors' fees, see ECF No. 28 ¶ 8(i); see generally ECF No. 28-13, and $402 in

filing fees for this action, see ECF No. 28 ¶ 8(j).

## IV.   CONCLUSION

For the reasons set forth above, the Court grants in part and denies without prejudice in

part Plaintiffs' motion, as detailed herein.  More specifically, the Court grants this motion in

favor of the Union for the Non-ERISA Contributions in the amount of $4,169.74 and denies

without prejudice pre-judgment interest thereon, grants this motion in favor of the Funds for the

ERISA Contributions in the amount of $46,339 and denies without prejudice pre-judgment

interest thereon and an additional amount of interest or liquidated damages, grants an award of

attorneys' fees in the amount of $11,685 and grants an award of costs in the amount of

$1,861.45, totaling $64,055.19.

By October 21, 2024, Plaintiffs may file a supplemental submission, which need not be a

separate motion, including either or both of the following: (1) legal argument as to why the Court

should grant pre-judgment interest in favor of the Union on the Non-ERISA Contributions and

(2) an affidavit setting forth pre-judgment interest calculations, through the date of the

supplemental submission, on the ERISA Contributions, including the pertinent date on which

interest began to accrue for each such calculation.  If Plaintiffs do not intend to file such a

supplemental submission, by October 21, 2024, they must file a letter informing the Court of

such decision.  Either the supplemental submission or the letter must be accompanied by a

proposed form of judgment as to the relief granted herein, as well as any additional relief

requested in the supplemental submission if Plaintiffs file such a submission; Plaintiffs must

send a Word version of the proposed form of judgment via email to

scanlon_chambers@nyed.uscourts.gov. If Plaintiffs file a supplemental submission, they must

mail a copy of such submission, including the proposed form of judgment, to Baymen and to

Baymen's counsel of record. If Plaintiffs file a supplemental submission, Baymen may file an

opposition by November 4, 2024, and no reply is permitted.

The Court will not enter a partial judgment at this time. Instead, following receipt of

either Plaintiffs' supplemental submission, and any opposition thereto, or Plaintiffs' letter

notifying the Court that they do not intend to file a supplemental submission, the Court will enter

a complete judgment.

The Court will mail a copy of this Order to Baymen Industries Ltd., 27 Audrey Avenue,

Oyster Bay, NY 11771, and to Richard B. Ziskin, The Ziskin Law Firm, LLP, 6268 Jericho

Turnpike, Suite 12A, Commack, NY 11725.

Dated: Brooklyn, New York
      September 24, 2024

*Vera M. Scanlon*
    VERA M. SCANLON
  United States Magistrate Judge